UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

HOLLEY MARIE SHUBA,

     Plaintiff,

v.                         Case No.:  6:23-cv-952-DNF

COMMISSIONER OF SOCIAL
SECURITY,

     Defendant.
_____

## **OPINION AND ORDER**

Plaintiff Holley Marie Shuba seeks judicial review of the final decision of the Commissioner of the Social Security Administration ("SSA") denying her claim for a period of disability and disability insurance benefits. The Commissioner filed the Transcript of the proceedings ("Tr." followed by the appropriate page number), and the parties filed legal memoranda setting forth their positions. Plaintiff also filed a reply brief. As explained below, the decision of the Commissioner is **REVERSED and REMANDED** under § 205(g) of the Social Security Act, 42 U.S.C. § 405(g).

## I.    Social Security Act Eligibility, Standard of Review, Procedural History, and the ALJ's Decision

### A.    Social Security Eligibility

The law defines disability as the inability to do any substantial gainful activity by reason of any medically determinable physical or mental impairment which can

be expected to result in death, or which has lasted or can be expected to last for a continuous period of not less than twelve months. 42 U.S.C. §§ 416(i), 423(d)(1)(A); 1382c(a)(3)(A); 20 C.F.R. §§ 404.1505(a), 416.905(a). The impairment must be severe, making the claimant unable to do her previous work, or any other substantial gainful activity which exists in the national economy. 42 U.S.C. §§ 423(d)(2)(A), 1382c(a)(3)(A); 20 C.F.R. §§ 404.1505–404.1511, 416.905–416.911.

**B.    Standard of Review**

The Commissioner's findings of fact are conclusive if supported by substantial evidence. 42 U.S.C. § 405(g). "Substantial evidence is more than a scintilla and is such relevant evidence as a reasonable person would accept as adequate to support a conclusion. Even if the evidence preponderated against the Commissioner's findings, we must affirm if the decision reached is supported by substantial evidence." *Crawford v. Comm'r of Soc. Sec.*, 363 F.3d 1155, 1158 (11th Cir. 2004). In conducting this review, this Court may not reweigh the evidence or substitute its judgment for that of the ALJ, but must consider the evidence as a whole, taking into account evidence favorable as well as unfavorable to the decision. *Winschel v. Comm'r of Soc. Sec.*, 631 F.3d 1176, 1178 (11th Cir. 2011) (citation omitted); *Foote v. Chater*, 67 F.3d 1553, 1560 (11th Cir. 1995); *Martin v. Sullivan*, 894 F.2d 1520, 1529 (11th Cir. 1990). Unlike findings of fact, the Commissioner's conclusions of law are not presumed valid and are reviewed under a de novo

standard. *Keeton v. Dep't of Health & Human Servs.*, 21 F.3d 1064, 1066 (11th Cir. 1994); *Maldonado v. Comm'r of Soc. Sec.*, No. 20-14331, 2021 WL 2838362, at *2 (11th Cir. July 8, 2021); *Martin*, 894 F.2d at 1529. "The [Commissioner's] failure to apply the correct law or to provide the reviewing court with sufficient reasoning for determining that the proper legal analysis has been conducted mandates reversal." *Keeton*, 21 F.3d at 1066.

The ALJ must follow five steps in evaluating a claim of disability. 20 C.F.R. §§ 404.1520, 416.920. At the first step, the ALJ must determine whether the claimant is currently engaged in substantial gainful employment. 20 C.F.R. § 404.1520(a)(4)(i), (b); 20 C.F.R. § 416.920(a)(4)(i), (b). At step two, the ALJ must determine whether the impairment or combination of impairments from which the claimant allegedly suffers is "severe." 20 C.F.R. § 404.1520(a)(4)(ii), (c); 20 C.F.R. § 416.920(a)(4)(ii), (c). At step three, the ALJ must decide whether the claimant's severe impairments meet or medically equal a listed impairment. 20 C.F.R. § 404.1520(a)(4)(iii), (d); 20 C.F.R. § 416.920(a)(4)(iii), (d). If the ALJ finds the claimant's severe impairments do not meet or medically equal a listed impairment, then the ALJ must determine whether the claimant has the residual functional capacity ("RFC") to perform her past relevant work. 20 C.F.R. § 404.1520(a)(4)(iv), (e)–(f); 20 C.F.R. § 416.920(a)(4)(iv), (e)–(f).

If the claimant cannot perform past relevant work, the ALJ must determine at step five whether the claimant's RFC permits her to perform other work that exists in the national economy. 20 C.F.R. §§ 404.1520(a)(4)(v), (g), 416.920(a)(4)(v), (g). At the fifth step, there are two ways in which the ALJ may establish whether the claimant is capable of performing other work available in the national economy. The first is by applying the Medical Vocational Guidelines, and the second is by the use of a vocational expert. *Phillips v. Barnhart*, 357 F.3d 1232, 1239-40 (11th Cir. 2004); *Atha v. Comm'r, Soc. Sec. Admin.*, 616 F. App'x 931, 933 (11th Cir. 2015).

The claimant bears the burden of proof through step four. *Atha*, 616 F. App'x at 933. If the claimant meets this burden, then the burden temporarily shifts to the Commissioner to establish the fifth step. *Id.*; 20 C.F.R. § 404.1520(a)(4)(v), (g); 20 C.F.R. § 416.920(a)(4)(v), (g). If the Commissioner presents evidence of other work that exists in significant numbers in the national economy that the claimant is able to perform, only then does the burden shift back to the claimant to prove she is unable to perform these jobs. *Atha*, 616 F. App'x at 993.

## C.    Procedural History

Plaintiff applied for a period of disability and disability insurance benefits on August 17, 2018, alleging disability beginning on January 15, 2017.[1] (Tr. 17, 162).

---

[1] In the application, Plaintiff alleged an onset date of June 1, 2016. (Tr. 413). At the first hearing, she amended the onset date to January 15, 2017, which ALJ Jarvis adopted. (Tr. 17, 135-36).

The application was denied initially. (Tr. 162). Plaintiff requested a hearing, and on November 13, 2019, a hearing was held before Administrative Law Judge Robyn Hoffman. (Tr. 102-147). On December 27, 2019, ALJ Hoffman entered a decision finding Plaintiff not under a disability from January 15, 2017, through the date of the decision. (Tr. 193-207). On September 29, 2020, the Appeals Council remanded the case to an administrative law judge for further proceedings. (Tr. 212-14).

Based on the remand, Administrative Law Judge Valencia Jarvis ("ALJ") held another hearing on August 9, 2022. (Tr. 41-101). On November 28, 2022, the ALJ entered a decision, finding Plaintiff was not under a disability from January 15, 2017, the alleged onset date, through December 31, 2019, the date last insured. (Tr. 17-33). Plaintiff filed a Complaint (Doc. 1) on May 22, 2023, and the case is ripe for review. The parties consented to proceed before a United States Magistrate Judge for all proceedings. (Doc. 21).

### D.    Summary of ALJ's Decision

In this matter, the ALJ found Plaintiff met the insured status requirements of the Social Security Act through December 31, 2019. (Tr. 19). At step one of the sequential evaluation, the ALJ found that Plaintiff had not engaged in substantial gainful activity from January 15, 2017, through her date last insured of December 31, 2019. (Tr. 19). At step two, the ALJ found that through the date last insured, Plaintiff had the following severe impairments: "relapsing remitting multiple

sclerosis: fibromyalgia; incomplete tetraplegia; sleep disorder; and, post-traumatic stress disorder (PTSD)." (Tr. 19). At step three, the ALJ found that through the date last insured, Plaintiff did not have an impairment or combination of impairments that meets or medically equals the severity of any of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1 (20 C.F.R. §§ 404.1520(d), 404.1525, and 404.1526). (Tr. 20).

Before proceeding to step four, the ALJ found that through the date last insured, Plaintiff had the following RFC:

> After careful consideration of the entire record, the undersigned finds that, through the date last insured, the claimant had the residual functional capacity to perform light work as defined in 20 [C.F.R. §] 404.1567(b) except s[h]e could occasionally balance, stoop, kneel, crouch, crawl and climb ramps, stairs, ladders, ropes, or scaffolds. She should have rare exposure to cold temperature extremes. She could have occasional interaction with the general public and could adapt to occasional changes in the work setting. She is able to understand, remember and carry out simple and routine tasks; and could maintain attention and concentration for completion of simple and routine tasks for 2 hours at a time over the course of an 8-hour day.

(Tr. 23).

At step four, the ALJ determined that through the date last insured, Plaintiff was unable to perform any past relevant work as a typist or security guard. (Tr. 31-32). At step five, the ALJ found that through the date last insured and considering Plaintiff's age (35 years old on the date last insured), education (at least high school), work experience, and RFC, there were jobs that existed in significant numbers in the

national economy that Plaintiff could have performed. (Tr. 32). Specifically, the vocational expert testified that a person with Plaintiff's limitations could have performed such occupations as:

(1)  Bagger, DOT 920.687-018,[2] light, SVP 1

(2)  Laundry sorter, DOT 361.687-014, light, SVP 2,

(3)  Folder, DOT 369.687-018, light, SVP 2

(Tr. 32-33). The ALJ concluded that Plaintiff had not been under a disability from January 15, 2017, the alleged onset date, through December 31, 2019, the date last insured. (Tr. 33).

## II.    Analysis

On appeal, Plaintiff raises one issue: whether the ALJ failed to provide an adequate rationale when determining the persuasiveness of medical opinions and failed to account for the fluctuation of Plaintiff's symptoms. (Doc. 15, p. 22-23). Plaintiff contends that the ALJ erred in her consideration of the opinions of Deborah Marshall, Psy.D., Jeanne Shapiro, Ph.D., M. Momot-Baker, Ph.D., Jeanette Lopez-Nunes, M.D., and Cornelia Mihai, M.D. (Doc. 15, p. 24-35). The same legal standard applies to all of these opinions.

---

[2] DOT refers to the *Dictionary of Occupational Titles*.

### A.      Legal Standard

The regulations for disability cases filed after March 27, 2017 – such as this one – changed and an ALJ no longer defers or gives any specific evidentiary weight to a medical opinion. 20 C.F.R. § 404.1520c(a), 20 C.F.R. § 416.920c(a). Thus, an ALJ no longer uses the term "treating source" and does not defer or give specific evidentiary weight, including controlling weight, to any medical opinion or prior administrative medical finding. *Torres v. Comm'r of Soc. Sec.*, No. 6:19-cv-1662-ORL-PDB, 2020 WL 5810273, at *2 (M.D. Fla. Sept. 30, 2020) (citing 20 C.F.R. § 404.1520c(a)).

Instead, an ALJ assesses the persuasiveness of a medical source's opinions given these five factors, with the first two being the most important: (1) supportability; (2) consistency; (3) relationship with the claimant, including the length, frequency, and purpose of the examining and any treatment relationship; (4) specialization; and (5) other factors, such as the source's familiarity with other evidence concerning the claim, that tend to support or contradict the medical opinion. 20 C.F.R. § 404.1520c(a)-(c); 20 C.F.R. § 416.920c(a)-(c). An ALJ may but is not required to explain how he considers factors other than supportability and consistency, unless two or more opinions are equally persuasive on the same issue. 20 C.F.R. § 404.1520c(b)(2); 20 C.F.R. § 416.920c(b)(2).

For supportability, the revised rules provide: "The more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s) or prior administrative medical finding(s), the more persuasive the medical opinions or prior administrative medical finding(s) will be." 20 C.F.R. § 404.1520c(c)(1); 20 C.F.R. § 416.920c(c)(1). For consistency, the revised rules provide: "The more consistent a medical opinion(s) or prior administrative medical finding(s) is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the medical opinion(s) or prior administrative medical finding(s) will be." 20 C.F.R. § 404.1520c(c)(2); 20 C.F.R. § 416.920c(c)(2).

The new regulations also differentiate between medical opinions and "other medical evidence." 20 C.F.R. §§ 404.1513(a)(2)-(3), 416.913(a)(2)-(3). "A medical opinion is a statement from a medical source about what you can still do despite your impairment(s) and whether you have one or more impairment-related limitations or restrictions" in the abilities listed in paragraphs (a)(2)(i) through (iv). 20 C.F.R. §§ 404.1513(a)(2), 416.913(a)(2). "Other medical evidence is evidence from a medical source that is not objective medical evidence or a medical opinion, including judgments about the nature and severity of your impairments, your medical history, clinical findings, diagnosis, treatment prescribed with response, or prognosis." 20 C.F.R. §§ 404.1513(a)(3), 416.913(a)(3).

**B.      Deborah Marshall, Psy.D.**

Plaintiff contends that Dr. Marshall examined Plaintiff and found she would have difficulty in establishing and maintaining effective work and social relationships. (Doc. 15, p. 24; Tr. 1081). Plaintiff argues that the ALJ failed to discuss this opinion and included no limitations in the RFC for interactions with supervisors or coworkers. (Doc. 15, p. 24-25). The Commissioner argues that Dr. Marshall's statements related to relationships with supervisors and coworkers is not considered an opinion within the meaning of the regulations. (Doc. 17, p. 6-7). Further the Commissioner contends that the ALJ agreed that Plaintiff had social and occupational difficulties as shown by including a limitation to occasional interaction with the general public in the RFC. (Doc. 17, p. 7; Tr. 23). The Court finds merit in Plaintiff's argument.

As stated above, the regulations define a medical opinion as "a statement from a medical source about what you can still do despite your impairment(s) and whether you have one or more impairment-related limitations or restrictions in the following abilities: . . . responding appropriately to supervision, co-workers, or work pressures in a work setting." 20 C.F.R. § 404.1513(a)(2) - (ii). In a progress note date March 31, 2017, Dr. Marshall found Plaintiff had, "[d]ifficulty in establishing and maintaining effective work and social relationships." (Tr. 1081).

In the decision when considering the paragraph B criteria of interacting with others, the ALJ found Plaintiff had moderate limitations. (Tr. 22). The ALJ discussed Plaintiff's history of quitting or being fired from jobs because of arguments, customer complaints, and issues with controlling her anger. (Tr. 22). The ALJ then noted that Plaintiff had a close relationship with her mother and cousin and cooperated with her medical providers. (Tr. 22). The ALJ concluded, "the claimant could have difficulty dealing with the general public and [the undersigned] has considered this in the mental residual functional capacity assessment. However, there is no evidence in the area of mental functioning to warrant greater limitations relating to the claimant's ability to relate to and work with supervisors, co-workers, and the public." (Tr. 22). While the ALJ noted that Plaintiff may have "difficulty" dealing with the public and included a limitation in the RFC for it, the ALJ failed to mention Dr. Marshall's findings about Plaintiff's difficulties maintaining effective work and social relationships, but at the same time found no evidence in this area in the record. (Tr. 22).[3] At least some evidence existed, which the ALJ failed to consider and which arguably may have led to additional limitations in the RFC for

---

[3] Dr. Marshall was not alone in finding Plaintiff had difficulties in establishing and maintaining effective work and social relationships. In an October 2018 consultative examination, Jeanne Shapiro, Ph.D. also found Plaintiff "appeared to have moderate-marked limitations interacting adequately with supervisors, coworkers, and the public." (Tr. 1559). This opinion further contradicts the ALJ's statement that there was no evidence "in the area of mental functioning to warrant greater limitations related to the claimant's ability to relate to and work with supervisors, co-workers, and the public." (Tr. 22).

these difficulties. For these reasons, remand is warranted to consider Dr. Marshall's statement along with all of the other medical evidence of record.

### C.    Jeanette Lopez-Nunes, M.D.

Plaintiff contends that the ALJ never discussed Dr. Lopez-Nunes' opinion, which is inconsistent with the RFC assessment and thus not harmless error. (Doc. 15, p. 30-31). Plaintiff argues that an ALJ must evaluate all medical source opinions, citing 20 C.F.R. § 404.1520c; 20 C.F.R. § 416.920c. (Doc. 15, p. 31). The Commissioner argues that the ALJ's failure to consider Dr. Lopez-Nunes' opinion does not warrant remand, and is "harmless error at worst." (Doc. 17, p. 9-10).

The Commissioner provides three reasons to support this argument. First, the Commissioner contends that Dr. Lopez-Nunes did not offer her opinion until February 2022, more than two years after the date last insured, and failed to distinguish between Plaintiff's current functioning and her functioning during the relevant period. (Doc. 17, p. 10). Second, Dr. Lopez-Nunes did not examine Plaintiff before the date last insured – her first examination was almost 11 months after her date last insured – and argues this opinion does not relate to the relevant period. (Doc. 17, p. 10). And third, Dr. Lopez-Nunes' opinion largely mirrors opinions submitted by Jorge Gonzalez, M.D. and Cornelia Mihai, M.D., which the ALJ did consider and found unpersuasive as contradictory to numerous medical records. (Doc. 17, p. 10-11). The Court disagrees.

An individual's RFC is her ability to do physical and mental work activities on a sustained basis despite limitations secondary to her established impairments. *Delker v. Comm'r of Soc. Sec.*, 658 F. Supp. 2d 1340, 1364 (M.D. Fla. 2009). In determining a claimant's RFC, the ALJ must consider all relevant evidence including non-severe impairments. *Barrio v. Comm'r of Soc. Sec.*, 394 F. App'x 635, 637 (11th Cir. 2010). Furthermore, the ALJ must "'scrupulously and conscientiously probe into, inquire of, and explore for all relevant facts.'" *Henry v. Comm'r of Soc. Sec.*, 802 F.3d 1264, 1267 (11th Cir. 2015) (quoting *Cowart v. Schweiker*, 662 F.2d 731, 735 (11th Cir.1981)). In other words, ALJs "are by law investigators of the facts and are tasked not only with the obligation to consider the reasons offered by both sides, but also with actively developing the record in the case." *Id*.

To assess an RFC, an ALJ must consider all of the relevant evidence. *Barrio*, 394 F. App'x at 637. The ALJ did not consider or assess Dr. Lopez-Nunes' opinion. This omission is not harmless error.

On February 24, 2022, Dr. Lopez-Nunes completed a Multiple Sclerosis Medical Source Statement. (Tr. 3030-33). Dr. Lopez-Nunes stated that the time period for this statement was from June 1, 2016, through the present. (Tr. 3030). Dr. Lopez-Nunes stated that Plaintiff was diagnosed with multiple sclerosis based on MRI's, spinal taps, and other testing in 2014. (Tr. 3030). Dr. Lopez-Nunes found Plaintiff more limited than the RFC assessment. (*Compare* Tr.23, *with* Tr. 3030-33).

For instance, Dr. Lopez-Nunes found Plaintiff: able to sit and stand for about two hours each in an 8-hour workday; needing to shift positions throughout the day; needing 4-5 breaks throughout the workday for 15-20 minutes each; able to lift less than 10 lbs. occasionally and 10 lbs. rarely; limited in the use of hands, fingers, and arms; off task 25% or more of a workday; incapable of even low stress work; would have good and bad days; and would miss more than 4 days per month. (Tr. 3031-33). These limitations far exceed those found in the RFC assessment.

The Commissioner contends that Dr. Lopez-Nunes did not examine Plaintiff until after the date last insured and did not offer her opinion until February 2022, well after the date last insured. (Doc. 17, p. 10). While true, Dr. Lopez-Nunes' Medical Source Statement shows that she considered medical records before that time by referring to MRI's and a spinal tap from 2014 and by stating that the opinion was for the time period from June 2016 to present. (Tr. 3030). Lastly, the Commissioner argues that Dr. Lopez-Nunes' opinion largely mirrors those submitted by Dr. Gonzalez and Dr. Mihai. (Doc. 17, p. 10-11).[4] Although the opinions of Dr. Gonzalez and Dr Mihai are similar to Dr. Lopez-Nunes' opinion

---

[4] The Commissioner cites *Sparks v. Berryhill*, No. 3:17-CV-00585-J-JRK, 2018 WL 2676578 (M.D. Fla. June 5, 2018) for the proposition that while the ALJ did not discuss Dr. Lopez-Nunes' opinion, it is harmless error because her opinion was the same as other doctors opinions' that the ALJ did evaluate. (Doc. 17, p. 11). *Sparks* is distinguishable because as explained above, the other doctors' opinions and explanations differ from Dr. Lopez-Nunes' opinion. Also, in *Sparks*, the ALJ at least acknowledged the doctor, while here the ALJ did not. *See Sparks*, 2018 WL 2676578, at *5.

because they are more limited than the RFC assessment, many similarities stop there. Equally, many of their opinions and explanations differ from those of Dr. Lopez-Nunes. (*See* Tr. 1890-94, 3034-37). For instance, Dr. Gonzalez found Plaintiff would require to lie down for 4 hours in an 8-hour day, and Dr. Mihai found Plaintiff able to sit and stand for less than 2 hours in an 8-hour day. (Tr. 1892, 3034). Whereas Dr. Lopez-Nunes made different findings. "If an action is to be upheld, it must be upheld on the same bases articulated in the agency's order." *Baker v. Comm'r of Soc. Sec.*, 384 F. App'x 893, 896 (11th Cir. 2010). Here, the Commissioner engaged in post hoc rationalization regarding Dr. Lopez-Nunes' opinion, which does not provide a basis for judicial review of the administrative decision. *Id.* For these reasons remand is warranted.

### D.    Remaining Issues

Plaintiff also challenges the ALJ's assessment of the opinions of other medical providers. Rather than deciding these issue, because this action is remanded to reconsider the opinions of Dr. Marshall and Dr. Lopez-Nunes, the Commissioner is directed to reconsider the relevant medical evidence as a whole.

### III.    Conclusion

For the reasons discussed above, the decision of the Commissioner is **REVERSED and REMANDED** such that this action is remanded under sentence four of 42 U.S.C. § 405(g) for the Commissioner to consider the opinions of Dr.

Marshall and Dr. Lopez-Nunes as well as reconsider the relevant medical evidence as a whole. The Clerk of Court is directed to enter judgment consistent with this opinion, terminate any motions and deadlines, and afterward close the file.

    **DONE** and **ORDERED** in Fort Myers, Florida on July 12, 2024.

DOUGLAS N. FRAZIER
UNITED STATES MAGISTRATE JUDGE


Copies furnished to:

Counsel of Record
Unrepresented Parties